# American Tie & Timber Co. v. Naylor Lumber Company.

## Assumpsit.

(Decided December 17, 1914.  67 South. 246.)

1. *Sale*; *Contract*; *Breach*; *Certainty*.—An unexecuted contract for the sale of as many cross ties as it is possible for the seller to accumulate at a certain place for twelve months is not sufficiently certain to be the basis of an action for its breach, it appearing that the quantity of cross ties which might be thus accumulated depends on uncertain elements and contingencies.

2. *Same*; *Indefinite*; *Delivery*.—Where the seller delivers cross ties at a point specified in the contract, he may recover for the failure of the buyer to accept the ties so delivered, notwithstanding the con-

tract is not sufficiently certain as to the quantity of ties to be delivered.

3. *Contracts; Construction; Validity.*—Contracts will be so constructed as to render them enforceable rather than void for uncertainty, if that be possible.

4. *Appeal and Error; Objection Below; Pleading.*—Although demurrer was not filed to the complaint, a judgment for plaintiff based upon a complaint which fails to state a cause of action will be reversed on appeal.

5. *Pleading; Complaint; Requisites.*—While the facts averred in the complaint may be established inferentially from other facts in evidence, the cause of action relied on should be stated in the complaint, and not left in inference.

6. *Bailment; Storage; Complaint; Sufficiency.*—In an action for storage charges, counts of the complaint which merely allege that plaintiff had agreed for defendant to store cross ties in plaintiff's boom for an indefinite time, and had terminated this contract by a notice stating that certain storage charges would be made thereafter, and that notwithstanding such notice defendant continued to store ties in the boom, was demurrable for a failure to allege that the defendant permitted the ties to remain in the boom for more than a reasonable time after the notice was given.

7. *Same; Reasonable Notice.*—Where the buyer agreed that the seller could store the ties free of charges in a boom for an indefinite time, the seller was entitled to a reasonable time within which to remove the ties, after notice of the termination of the contract before the seller could be charged with storage.

8. *Same; Contract.*—Where a company had stored cross ties in a boom under a contract entitling it to do so for an indefinite time, and the owner of the boom notified the seller that a certain charge would be made for storage of all ties left in the boom, or thereafter placed therein, the act of the seller in permitting its ties to remain in the boom for more than a reasonable time thereafter, obligates it to pay the storage charges specified in the notice.

9. *Same; Jury Question.*—In an action on a contract obligating the seller to pay storage charges on ties which were permitted to remain in plaintiff's boom for more than a reasonable time after being notified that a charge would be made for storage, the question of what is a reasonable time is one for the jury.

APPEAL from Mobile Law and Equity Court.

Heard before Hon. SAFFOLD BERNEY.

Action by the Naylor Lumber Company against the American Tie & Timber Company, for breach of contract. Judgment for plaintiff and defendant appeals. Reversed and remanded.

INGE & ARMBRECHT, for appellant.

CLARKE, BROWN & HOWARD, for appellee.

DE GRAFFENRIED, J.— (1) This action was brought by the appellee against the appellant to recover damages for the alleged breach of a contract for the purchase of cross-ties as well as to recover compensation for services in the matter of forwarding certain cross-ties to the Isthmian Canal Commission at the port of Colon, and for compensation for the storage of appellant's cross-ties in a certain boom belonging to the appellee at Moss Point, Miss.

In the sixth count of the complaint appellee alleges that on the 19th day of February, 1913, it entered into a contract with the appellant, which contract was in writing, as follows:

"New Orleans, La., Feb. 19, 1913.

"The Naylor Lumber Company, New Orleans, La.— Gentlemen: For and in consideration of the sum of $1.00 each and to us in hand paid, we agree to take and they to deliver as many heart cross-ties as it is possible for them to accumulate at Moss Point, for twelve months from the above time, at the following price:

"7x9—8'6" ties at 52 cents.

"7x8—8'6" ties at 47 cents.

"6x8'   ties at 44 cents.

"Upon completion of delivery of two hundred thousand (200,000) or more ties by the Naylor Lumber Company in twelve months' time or less, we agree to pay them one cent (1c) additional on the said 200,000 ties on any further quantity they deliver. This agreement to stand good for twelve months.

"It is further agreed by the parties hereto that the said American Tire & Lumber Co. shall have supervision over the inspection of all the ties delivered to them by the Naylor Lumber Company. That they shall also pay all drafts drawn by inspector of the Naylor Lumber Co. for actual cost of ties delivered in boom or on wharf in

Moss Point, when inspector's certificate is attached to draft drawn by said inspector.     Yours truly,

    "American Tie & Lumber Co.,

     "C. Y. Naylor, Agent.

    "Naylor Lbr. Co.,

     "By W. E. Clark, Secy. & Treas."

After setting out the contract, the count further alleges, in substance, that the appellee complied with all of the provisions of the contract up to the 19th day of March, 1913, and that at that time it stood ready and willing and offered to carry out the provisions of the contract on its part to be performed, but that on the 19th day of March, 1913, the appellant notified the appellee that it would no longer carry out the provisions of said contract, and that since that time the appellant had wholly failed and refused to comply with the provisions of the contract.  Several grounds of demurrer were interposed to this count, but none of them raised the question of indefiniteness or want of mutuality in the contract.  It is urged on appeal that this count does not state a substantial cause of action, and for that reason will not support a verdict.

The contract, in short, is that the appellee would sell and deliver and the appellant would buy for a fixed price "as many heart cross-ties as it is possible for them [appellee] to accumulate at Moss Point for twelve months" from the date of the contract, which cross-ties were to be of certain dimensions.  This agreement is readily distinguishable from those where the quantity to be bought and sold is "ascertainable with reasonable certainty."  It has been correctly held that a contract to purchase the entire output of a certain mill or manufacturing plant, for a given time, at a given price, is valid; and likewise a contract to purchase all of the coal of a certain quality that might be needed for a certain

plant, at a certain price and for a fixed period is valid. In such cases the quantity, though it may depend to some extent on the will or effort of one of the contracting parties, can be ascertained with reasonable certainty; but in the present case the quantity depends upon so many uncertain elements and contingencies that we cannot say that it can be brought within the foregoing principle. The quantity to be bought and sold under the present contract (as many heart cross-ties as it is possible for the appellee to accumulate at Moss Point within 12 months) depends on the financial ability, the business capacity, the industry, the efficiency, and credit of the appellee, the supply of labor, all·under constantly changing conditions, as well as on the supply and demand for heart cross-ties with the world as a market, and also on the uncertainty of transportation facilities and the responsibility of dealers in heart cross-ties and their respective abilities to perform such contracts as they might make with the appellee for cross-ties which might be bought from such dealers by the appellee for delivery under this contract.

An examination of the face of the contract, without more, shows that no breach could be assigned upon it which could be compensated for in damages capable of being computed with reasonable certainty; but it con·tains a promise for a promise, and is executory, extending over a period of 12 months; and though uncertain in its incipiency, by partial performance on the part of the Naylor Lumber Company, it might be made certain and enforceable to that extent. The time for making payments under the contract is not clearly stated therein, but the evidence shows that the parties themselves have construed the contract to mean that payments should be made on delivery, at different times during the year.

(2, 3) There is evidence in the case, somewhat con-

flicting, to the effect that, prior to the time when the appellant refused to further perform the contract, the Naylor Lumber Company had accumulated a quantity of cross-ties at Moss Point under the contract and according to the specifications. After these cross-ties had been so accumulated, the contract was executed to that extent, and it would be unconscionable to allow appellant to say that it would not comply with the terms of the contract and refuse to accept the cross-ties so accumulated. —*McIntyre Lumber & Export Co. v. Jackson Lumber Co.,* 165 Ala. 268, 51 South. 767, 138 Am. St. Rep. 66; *Central R. R. & Banking Co. v. Cheatham,* 85 Ala. 292, 300, 4 South. 828, 7 Am. St. Rep. 48. The law does not favor the destruction of contracts for uncertainty, and leans against such a construction as renders them unenforceable.—*McIntyre Lumber & Export Co. v. Jackson Lumber Co., supra; Boykin v. Bank,* 72 Ala. 262, 47 Am. Rep. 408.

If the sixth count of the complaint had alleged, in effect, that, prior to the time the appellant notified the appellee that it would not further perform the contract, the appellee had accumulated at Moss Point, under and pursuant to the contract, a certain number of cross-ties of the specified quality and dimensions, a substantial cause of action would have been stated.

(4) It has been held by this court that the complaint may be sufficient to support a judgment after verdict when attacked by motion in arrest of judgment, or on appeal, although it may have been subject to demurrer, if properly filed; but it is "the settled law of this state that a judgment for the plaintiff will be reversed where the facts appear on the face of the complaint and show that no substantial cause of action was disclosed, though the complaint was not demurred to."—3 Mayf. Dig. p. 1174, subd. 825; *Turnipseed v. Burton,* 4 Ala. App. 612,

58 South. 959.　On the face of the contract, in the pres-
ent case, the quantity appears to be too indefinite to
warrant an enforcement of the contract, in the absence
of averments in the complaint that the appellant had
performed the contract up to the time that the appellee
was notified that the appellant would no longer perform
the same.　It cannot be said that this count by intend-
ment alleges that, prior to the time when the appellant
notified the appellee it would not further perform the
contract, the appellee had accumulated at Moss Point,
under and in accordance with the contract, a certain
number of cross-ties, of the specified quality and dimen-
sions.　The sixth count of the complaint, therefore, does
not state a substantial cause of action, and will not sup-
port a verdict.　For this reason the trial court commit-
ted reversible error in not charging the jury, at the
written request of the appellant, that they could not
find for the appellee under said sixth count.

(5, 6)　In the tenth, eleventh, and twelfth counts of
the complaint the appellee sought to recover from the
appellant for storage of cross-ties which were placed in
the appellee's boom by the appellant.　These counts al-
lege, in substance, that there was a contract between the
appellee and the appellant under which the appellee had
agreed to allow the appellant to store certain ties in a
boom belonging to the appellee, the term of which con-
tract was indefinite, and that the appellee terminated
this contract by notice to the appellant and informed the
appellant that for any ties that were stored in the said
boom on the day of the notice, or that might be placed
in said boom by the appellant or kept therein there-
after, a charge of three cents for each tie per month
would be made, and that the appellant, notwithstanding
the said notice, did keep stored, or cause to be stored, a
large number of ties in said boom during a certain
month.

The agreement for the use of the boom, being for an indefinite period, could be terminated by the owner of the boom at any time; but the appellant, after receiving the notice of the termination of the contract, had a reasonable time within which to remove its ties from the boom.

(7) Demurrers were interposed to each of these counts, to the effect that they did not allege that the defendant was given a reasonable time, after the notice of the termination of the agreement, to remove the ties from the boom.

"Good pleading requires that the facts which constitute the cause of action relied on shall be stated in the complaint and not left in inference. Facts, when averred, may be established inferentially from other facts shown in evidence, but this is a rule of evidence and not of pleading."—*Fidelity & Deposit Co. of Maryland v. Walker,* 158 Ala. 129, 48 South. 600; *Daniels v. Carney,* 148 Ala. 81, 42 South. 452, 7 L. R. A. (N. S.) 920, 121 Am. St. Rep. 34, 12 Ann. Cas. 612.

These counts should contain such allegations as would show that the appellant permitted its ties to remain in the boom for more than a reasonable time after the termination of the agreement under which the cross-ties had previously been stored.

(8, 9) One ground of demurrer interposed to the foregoing counts was to the effect that they did not show a promise by the appellant to pay the appellee for the alleged storage of cross-ties. It is true that these counts do not allege an express contract, but they allege facts from which a promise to pay may be implied in fact. The notice that a charge of three cents per tie would be made for all ties that were left in the boom, or that might thereafter be placed therein, was an offer on the part of the appellee which might be accepted by the con-

duct of the appellant. As was said in *Mott v. Jackson,* 172 Ala. 448, 453, 55 South. 528, 529: "It is familiar contract law that where one party makes an offer, dependent upon some act of the other party, and the other party performs the act, that is an acceptance of the offer, and constitutes a sufficient consideration to support the contract."—*Central R. R. & Banking Co. v. Cheatham,* 85 Ala. 292, 4 South. 828, 7 Am. St. Rep. 48.

If, after notice, the appellant permitted its cross-ties to remain in the boom for more than a reasonable time, or after receiving the notice, it placed more cross-ties in the boom, it became obligated to pay three cents for each cross-tie per month so stored or permitted to remain stored. The question of reasonable time would be for the jury to determine, under the evidence in the case.

Reversed and remanded.

ANDERSON, C. J., and SOMERVILLE and GARDNER, JJ., concur.